# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| SHASHONE M. MARQUAND, | |
| Plaintiff, | No. 15-CV-02109-CJW |
| vs. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

## *I.     INTRODUCTION*

Shashone M. Marquand (claimant) seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for supplemental security income (SSI) pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* (Act).  Claimant alleged she became disabled in 2009 because of seizures.  AR 162.[1]  The Administrative Law Judge (ALJ) found claimant had severe impairments of pseudo-seizures/seizures, marijuana abuse, and obesity.  AR 16.  The ALJ found, however, that claimant was not disabled because, despite these limitations, claimant could perform a range of work available in the economy.  AR 17-21.  Claimant argues the ALJ erred in assessing the credibility of claimant's subjective complaints, and therefore, substantial evidence does not support the ALJ's decision.  For the reasons that follow, the Court affirms the Commissioner's decision.

---

[1] "AR" refers to the administrative record below.

## II. BACKGROUND

Claimant was born in 1992; she was 21 years old at the time of the hearing. AR 30-31, 159. Claimant obtained a General Education Development certificate (GED), but apparently also returned to school after giving birth to her child and graduated with her class from high school. AR 33, 163. Claimant's only past work has been babysitting, working in a fast food restaurant, and detasseling corn for a seed company. AR 18, 145, 163.

Claimant alleged her disability began on December 1, 2009. AR 159. Claimant did not apply for SSI benefits until July 25, 2012. AR 14, 48, 137-44. SSI benefits are not payable for any period prior to the month after a claimant files an application for benefits. 20 C.F.R. § 416.335. Accordingly, July 25, 2012, is the effective start date of claimant's alleged disability.

On October 10, 2012, the Commissioner denied claimant's application. AR 70-75. On January 7, 2013, the Commission denied reconsideration of the ruling. AR 84-88. Claimant sought review by an ALJ. On March 11, 2014, ALJ John E. Sandbothe conducted a hearing at which claimant and a vocational expert testified. AR 27-47. On June 24, 2014, the ALJ denied claimant's application. AR 14-22. On October 19, 2015, the Appeals Council denied claimant's requested review of the ALJ's decision. AR 1-3.

On December 23, 2015, claimant filed a complaint in this Court seeking judicial review. Doc. 3. The parties filed briefs and on July 19, 2016, the case was deemed ready for decision. Doc. 13-15. On July 20, 2016, the District Court referred the case to a United States Magistrate Judge for a Report and Recommendation. However, with consent of the parties, on August 22, 2016, the Honorable Linda R. Reade, Chief United States District Court Judge, transferred this case to a United States Magistrate Judge for final disposition and entry of judgment. Doc. 16.

### III. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when, due to physical or mental impairments, the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy, but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled. 20 C.F.R. § 416.966(c)(1)-(8).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Id.* § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. *Id.* § 416.972(a)(a). "Gainful" activity is work done for pay or profit, even if the claimant does not ultimately receive pay or profit. *Id.* § 416.972(b).

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and medical impairments. If the impairments are not severe, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). An impairment is not severe if "it does not significantly limit your

3

physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a); *see also* 20 C.F.R. § 416.920(c); *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means having "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include: "(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers, and usual work situations; and (6) Dealing with changes in a routine work setting." *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of the claimant's past relevant work. If the claimant can still do past relevant work, then the claimant is not considered disabled. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). Past relevant work is any work the claimant has done within the past 15 years of the application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. *Id*. § 416.960(b)(1). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*,

4

353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks and citations omitted); *see* 20 C.F.R. § 416.945(a)(1). The RFC is based on all relevant medical and other evidence. *Id.* § 416.945(a)(3). The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Id.* If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC, as determined in Step Four, will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do given the claimant's RFC, age, education, and work experience. *Id.* § 416.920(a)(4)(v). The Commissioner must show not only that the claimant's RFC will allow him or her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make the adjustment, then the Commissioner will find the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. *Id.* § 416.945(a)(3). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps, the ALJ has determined the claimant is disabled, but there is medical evidence of substance use disorders, the ALJ must decide if that substance use was a contributing factor material to the determination of disability. 42 U.S.C. § 423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without the substance use. *Id.* If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability and the claimant is not disabled. 20 C.F.R. §§ 404.1535, 416.935.

## IV. THE ALJ'S FINDINGS

The ALJ followed the five-step process for determining whether claimant was disabled. At step one, the ALJ found claimant had not engaged in substantial gainful employment since July 25, 2012. AR 16. At step two, the ALJ found claimant had severe impairments, including: pseudo-seizures/seizures, marijuana abuse, and obesity. *Id*. At step three, the ALJ found claimant's severe impairments did not rise to the level of meeting or equaling a listed impairment that would make her disabled. AR 16-17. At step four, the ALJ found claimant had "the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: she cannot perform around hazards or drive." AR 17-20. The ALJ found claimant had no past relevant work. AR 20. Finally, at step five, the ALJ found there were jobs that exist in significant numbers in the national economy that claimant could perform, including hand packager, sandwich maker, and housekeeper/cleaner. AR 20-21.

## V. THE SUBSTANTIAL EVIDENCE STANDARD

This Court must affirm the Commissioner's decision "'if the ALJ's decision is supported by substantial evidence in the record as a whole." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008)); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence" is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Wright*, 542 F.3d at 852 (quotation and citation omitted). The Eighth Circuit Court of Appeals has explained the standard as "something less than the weight of the evidence and allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal

on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (internal quotation omitted).

In determining whether the Commissioner's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but we do not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (internal citation omitted). The Court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The Court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, a court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989) (internal citations omitted). A court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The Court may not reverse the Commissioner's decision "simply because some evidence may support the opposite conclusion." *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011). *See also Goff v.*

*Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.") (internal citation omitted).

## VI. DISCUSSION

Claimant argues the ALJ's decision was flawed because the ALJ allegedly "failed to adequately assess [claimant's] credibility and her need for frequent absences." Doc. 13, at 3. In particular, claimant argues that the ALJ failed to adequately describe the basis for discounting claimant's credibility, pursuant to *Polaski v. Heckler*, 751 F.2d 943 (8th Cir. 1984). Doc. 13, at 3-8. In other words, claimant argues that the ALJ's decision finding her not disabled is not supported by substantial evidence on the record as a whole. The Commissioner, on the other hand, argues that the ALJ properly assessed and supported his credibility findings and that substantial evidence supports the ALJ's decision. Doc. 14, at 5-10. The Court agrees with the Commissioner.

### A. *The ALJ's Credibility Findings*

The ALJ noted claimant's assertion that she suffers from petite mal seizures twice a week and one grand mal seizure twice a month. AR 18. The ALJ found that, although there is evidence claimant has a severe impairment as a result of pseudo-seizures/seizures, "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." *Id*. Whenever an ALJ discounts the weight afforded a claimant's subjective complaints, the ALJ must consider: (1) the claimant's daily activities; (2) the intensity, duration, and frequency of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of any medications; (5) the claimant's functional restrictions; (6) the claimant's work history; and (7) the presence or absence of objective medical evidence

8

to support the claimant's complaints. *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011) (citing *Polaski*, 739 F.2d at 1322); *see* 20 C.F.R. § 416.929(c)(3). As claimant pointed out in her brief, making a credibility determination regarding those suffering from pseudo-seizures is complicated because of the psychological source of the disorder. The Eighth Circuit Court of Appeals recently expounded on this issue.

> Before turning to the details of [claimant's] medical and administrative history, we describe briefly the phenomenon of conversion disorder and the somatoform, non-epileptic "pseudo-seizures" that form the core of [claimant's] medical issues and alleged disability. Conversion disorder is a phenomenon in which a person actually and subjectively experiences symptoms without a known underlying medical cause. It is believed the symptoms, such as non-epileptic seizures, result from an unconscious, involuntary conversion of mental stress into a physiological symptom. In prior opinions, we reviewed these or similar disorders and noted the difficulty of assessing how such disorders limit a person's activities. In particular, we noted that a prime feature of conversion disorder may be a disconnect between the actual severity of symptoms demonstrated by clinical evidence and the way the applicant subjectively perceives the symptoms. That is not to say this exaggerated experience of symptoms amounts to malingering. Rather, the applicant actually believes herself to be experiencing symptoms at a greater level of severity than clinical evidence can support.
>
> Given this disconnect, an obvious difficulty arises when it becomes necessary to make credibility assessments in cases involving somatoform phenomena. Subjective perceptions of somatoform effects may, in fact, be debilitating even when clinical or diagnostic medical evidence does not fully support the claimed symptoms. It nevertheless remains necessary to make credibility assessments in these settings, and in cases involving somatoform disorder an ALJ is not free to reject subjective experiences without an express finding that the claimant's testimony is not credible. Where such a finding has been made, we will not disturb the decision of an ALJ who considers, but for good cause expressly discredits, a claimant's complaints even in cases involving somatoform disorder.
>
> Given the difficulty in this area, if an ALJ expressly accepts that a claimant suffers from a somatoform disorder, but also finds the claimant at least partially non-credible, the ALJ ideally should set forth the credibility

9

> determination with sufficient detail to expressly inform the reviewing court as to the factual details of the [claimant's] limitations as accepted or believed by the ALJ. And in this type of case, even more so than in other cases, corroborating testimony from actual witnesses such as family members or former employers regarding the nature of the symptoms may hold particular value for a fact finder.

*Nowling v. Colvin*, 813 F.3d 1110, 1113-15 (8th Cir. 2016) (internal quotations, citations, and footnote omitted).

In this case, the ALJ provided an adequate explanation for discounting claimant's subjective claims regarding her seizures. The ALJ discussed claimant's daily activities which did not demonstrate that her activities were limited other than with respect to her ability to drive. Claimant took care of her minor child, used a checking account and paid bills, read books, played computer games, completed crossword puzzles, visited with other people, played cards, cooked meals, cleaned dishes, shopped in stores, and cleaned laundry. AR 18. It was not unreasonable for the ALJ to view these daily activities as inconsistent with someone who is disabled from any form of employment.

The ALJ also took into account claimant's noncompliance with her doctor's prescriptions and directions in assessing her credibility. The medical records reflect that claimant repeatedly either did not take the medication prescribed her, or consumed marijuana against her doctors' instructions, despite their explanations that marijuana use was contributing to her seizures. *See* AR 18-19, 211, 255, 257, 259-61, 298, 301, 317, 377, 383, 387, 397, 411, and 417. An ALJ may properly consider noncompliance with treatment and medications in assessing a claimant's credibility. *See, e.g.*, *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001) (finding ALJ properly considered claimant's noncompliance with her doctor's instructions in assessing claimant's credibility); *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment also weighs against a claimant's credibility.").

Although the ALJ did not specifically note it, the records reflect that claimant also repeatedly denied drug use, despite repeatedly testing positive for controlled substances (marijuana in particular). *See*, *e.g.*, AR 260-61 (claimant "adamantly" denied using marijuana, although tested positive for its use); AR 397 (claimant denied drug use, though tested positive for marijuana). Claimant's lack of candor with her treatment providers about her drug use is a proper basis for discounting a claimant's credibility. *See George v. Astrue*, 301 Fed. App'x 581, 582 (8th Cir. 2008) (finding ALJ properly considered "some discrepancy in [the claimant's] reporting of her alcohol and drug use" in finding claimant's subjective claims were not credible).

The ALJ also considered the medical evidence in concluding that it was inconsistent with claimant's assertion as the frequency and severity of her seizures. The ALJ properly gave "considerable weight" to opinions by claimant's treating physician, Dr. Ameer Almullahassani. AR 19. Dr. Almullahassani opined that claimant was "[c]apable of moderate stress-normal work," could frequently lift and carry up to 50 pounds, could sit for at least six hours and stand and walk for at least six hours in an eight-hour day, and did not require additional unscheduled breaks during the workday. AR 442-44. Nothing in Dr. Almullahassani's records provide corroboration for the frequency and severity of seizures claimant alleged. Indeed, a contemporaneous "work/school release" issued by Dr. Almullahassani on October 4, 2012, provided only the following restrictions: "no driving 6 months after having a seizure, no operating dangerous machinery, no climbing on ladders or high levels, no swimming alone, and no flying a plane." AR 354. These limitations are similar to those reflected in the ALJ's residual functional capacity assessment. *See* AR 17 ("she cannot perform around hazards or drive"). In her brief, claimant argues that there is some inconsistency in the ALJ's reliance on Dr. Almullahassani's work-related limitations and the ALJ's conclusion that his medical records did not support claimant's subjective allegations. Doc. 13, at 6. The

Court sees no inconsistency. Dr. Almullahassani suggested minimal work-related limitations which were inconsistent with claimant's allegations that she is disabled and unable to work in any capacity.

The ALJ also afforded "significant weight" to the state agency consulting physicians' opinions. AR 20. Those physicians (Gary Cromer, M.D., and Laura Griffith, D.O.) concluded claimant was not disabled. AR 48-67. They further opined that claimant's "[c]redibility is eroded by h/o [history of] noncompliance with prescribed Keppra, and urine drug screen positive for THC [marijuana]." AR 55, 65. This is consistent with the ALJ's conclusion.

Claimant argues that the ALJ should have determined the frequency of claimant's seizures and hence how often during a month she would need to be absent from work. Doc. 13, at 7-8. Claimant asserts "[t]he medical records show [claimant] averaged ten to twelve seizures a month." Doc. 13, at 7 (citing AR 450). This assertion is not supported by independent medical evidence; rather, claimant's citation to the medical record here refers to a section of a report reflecting claimant's subjective complaints. This is similar to her testimony during the hearing, when she stated she averaged eight petit mal seizures and two grand mal seizures per month. AR 35. The ALJ noted that "there is a question as to the frequency of these seizures." AR 20. Contrary to claimant's argument, it was not the ALJ's responsibility to establish the frequency of the seizures. *See Baldwin*, 349 F.3d at 556 ("It is the claimant's burden, not the Social Security Commissioner's burden, to prove the claimant's RFC.").[2] This requires medical

---

[2] Claimant's reliance (Doc. 13, at 7-8) on this Court's opinions in *Mann v. Colvin*, 100 F. Supp. 3d 710, 723 (N.D. Iowa 2015) and *Stewart v. Colvin*, No. C13-2029, 2014 WL 1165870, at *13

evidence, not just claimant's subjective allegations. 20 C.F.R. §§ 416.908, 416.912(c), 416.928(a). The ALJ recognized that based on the medical records, and in particular claimant's repeated use of marijuana which doctors told her increased her seizures, it was not possible to determine how often claimant would have seizures were she to comply with her doctor's orders to stop using marijuana. AR 20. As noted in *Nowling*, claimant may have attempted to bolster the credibility of her claims as to the frequency and severity of her seizures by producing "corroborating testimony from actual witnesses such as family members or former employers regarding the nature of the symptoms." *Nowling*, 813 F.3d at 1115. Claimant did not do so in this case.

In summary, the ALJ explicitly stated that he discounted claimant's credibility and provided good cause for doing so. Therefore, this Court must "defer to the ALJ's credibility finding [when, as here,] the ALJ 'explicitly discredits a claimant's testimony and gives a good reason for doing so.'" *Buckner*, 646 F.3d at 558 (quoting *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010)). *See also Papesh v. Colvin*, 786 F.3d 1126, 1134 (8th Cir. 2015) (holding that a court will defer to an ALJ's credibility finding where it is supported by substantial evidence and good reasons); *McDade v. Astrue*, 720 F.3d 994, 998 (8th Cir. 2013) (credibility findings are entitled to deference if supported by good reasons and substantial evidence). This Court may not reverse an ALJ even if it believed there was some evidence that would support an opposite conclusion about claimant's credibility. *See Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015) (holding

---

(N.D. Iowa Mar. 21, 2014), is misplaced. Those cases involved arguments that the ALJ failed to fully develop the record to determine the impact those claimants' migraine headaches had on their likely absences from work. Claimant did not allege in her brief that the ALJ erred by failing to properly develop the record. In any event, neither of these cases stand for the proposition that the ALJ had an obligation to determine how often the claimants were likely to suffer from migraine headaches.

that a court may not reverse an ALJ's decision simply because some evidence would support an opposite conclusion).

### VII. CONCLUSION

After a thorough review of the entire record, the Court concludes there is substantial evidence in the record to support the Commissioner's decision. Accordingly, the Court **affirms** the decision of the ALJ.

**IT IS SO ORDERED** this 26th day of January, 2017.

_____
C.J. Williams
United States Magistrate Judge
Northern District of Iowa